UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| DAVID KOLKER,<br><br>   Plaintiff,<br>v.<br><br>VNUS MEDICAL TECHNOLOGIES, INC.,<br>COVIDIEN, INC., and DOES 1-20,<br><br>   Defendants. | Case No.: C 10-0900 SBA (PSG)<br><br>**ORDER GRANTING-IN-PART PLAINTIFF'S MOTION TO COMPEL; ORDER GRANTING-IN-PART DEFENDANTS' MOTION TO COMPEL**<br><br>**(Re: Docket Nos. 34, 35)** |

In this employment discrimination action, Plaintiff David Kolker ("Kolker") moves to compel Defendant Covidien, Inc. ("Covidien") to respond to several demands for inspection relating to European subsidiaries of Defendant VNUS Medical Technologies ("VNUS").[1] Covidien concurrently moves to compel Kolker to respond to special interrogatories and seeks to preclude testimony of certain expert witnesses. On October 18, 2011, the court heard oral argument on both motions. Having considered the briefs, oral argument, evidence and authority presented by both parties, Kolker's motion to compel is GRANTED-IN-PART and DENIED-IN-PART and Covidien's motion to compel is GRANTED with respect to the special interrogatories and

---

[1] On August 2, 2010, the court ruled that VNUS is not a proper party to this action, because at the time that Kolker filed his complaint, VNUS had ceased to exist as a separate corporate and legal entity, and could not be properly joined as a party. *See* Docket No. 17 at 5-6. The court nevertheless found that Kolker was not at fault for naming VNUS in the suit, given "the prominence of VNUS in the underlying events." *Id.*

1

Case No.: C 10-0900 SBA (PSG)
ORDER GRANTING-IN-PART PLAINTIFF'S MOTION TO COMPEL; ORDER GRANTING-IN-PART
DEFENDANTS' MOTION TO COMPEL

DENIED AS MOOT with respect to precluding expert testimony. Both parties also seek sanctions pursuant to Fed. R. Civ. P. 37(a)(5)(A), but neither party filed a separate motion for sanctions pursuant to Civ. L.R. 7-8. Accordingly, the court DENIES each party's request for sanctions.

## I. BACKGROUND

In April 2008, Kolker entered into a short-term consulting agreement with VNUS, which provided that Kolker would develop a business plan for a proposed new division, called the Centers for Advanced Vein Care ("CAVC").[2] Kolker alleges that he and Brian Farley ("Farley"), the Chief Executive Officer of VNUS, agreed that if he successfully developed a business plan, hired the appropriate individuals, and got CAVC running as a business, he would be hired to run CAVC as its CEO.[3] Kolker developed a business plan and received approval from VNUS's Board of Directors to proceed with CAVC, at which point VNUS performed a background check on Kolker and discovered his status as a recovering alcoholic.[4] Farley subsequently told Kolker that he was reluctant to hire him as CAVC CEO and instead in October 2008 offered him a second consulting agreement for a term of one year. The agreement further required Kolker to undergo regular drug and alcohol testing.[5] Kolker remained in discussion with Farley regarding the status of his application to be employed as CAVC CEO.[6] Farley repeatedly told Kolker that he was reluctant to present the issue to the board of directors. Six months into the second consulting agreement, Farley revealed that VNUS was being acquired by Covidien and that converting Kolker's consulting

---

[2] *See* Docket No. 1, Ex. A ¶ 10.

[3] *Id.*

[4] *Id.*

[5] *Id.* ¶¶ 11, 12; Docket No. 38 at 2.

[6] Docket No. 1 ¶ 14.

2

Case No.: C 10-0900 SBA (PSG)
ORDER GRANTING-IN-PART PLAINTIFF'S MOTION TO COMPEL; ORDER GRANTING-IN-PART
DEFENDANTS' MOTION TO COMPEL

arrangement into employment would not be possible until the merger was final.[7] After the acquisition of VNUS, Covidien ceased all CAVC operations.[8] Kolker was never hired as an employee.

Kolker alleges that VNUS did not hire him as an employee solely on this basis of his disability, as evidenced by the terms of the second consulting agreement and VNUS's actions.[9] As a result, Kolker allegedly suffered damages in the form of lost income and benefits, including the loss of stock options and grants that would have vested upon VNUS's acquisition by Covidien.[10] In December 2009, Kolker sued VNUS, Covidien, and twenty Doe defendants in Santa Clara Superior Court, alleging state law violations. In March 2010, Defendants removed the case to this court and successfully opposed a remand to state court.

On July 19, 2011, Kolker served his third set of demands for inspection of documents ("DFIs"). At issue are DFI nos. 41, 42, 43, 45, 46, 67 and 68.[11] DFI nos. 41 and 42 seek the business plans, defined as "all drafts or versions of a business plan prepared before, during or after the formation of the subsidiary," and/or summaries of or references thereto, for VNUS's British and German subsidiaries, respectively.[12] DFI nos. 43 and 45 seek the stock option plans and stock grant plans, respectively, and/or or summaries of or references thereto, for VNUS's British subsidiary.[13] DFI no. 46 seeks the stock grant plans, and/or summaries of or references thereto, for

---

[7] *Id.* ¶ 15.

[8] *Id.*

[9] *Id.* ¶¶ 12, 16.

[10] *Id.* ¶ 17.

[11] Kolker's motion to compel initially included DFI nos. 69 and 70. Kolker has since withdrawn his request with respect to these items based on Covidien's production. *See* Docket No. 42 at 4.

[12] Docket No. 34-2, Ex. A.

[13] *Id.*

3

Case No.: C 10-0900 SBA (PSG)
ORDER GRANTING-IN-PART PLAINTIFF'S MOTION TO COMPEL; ORDER GRANTING-IN-PART DEFENDANTS' MOTION TO COMPEL

VNUS's German subsidiary.[14] And DFI nos. 67 and 68 seek the employment agreements, and/or summaries of or references to employment agreements entered into with employees of VNUS's British and German subsidiaries, respectively.[15] Covidien objects to these DFIs primarily on grounds of relevance, arguing that information and documents pertaining to VNUS's European subsidiaries have no bearing on Kolker's claims and cannot provide even a relevant point of comparison for Kolker's evaluation of his alleged damages. Covidien further objects to the requests for employment agreements and stock options/grants on the ground that they impinge on the third-party employees' fundamental privacy rights.

On August 3, 2011, Covidien served Kolker its second set of special interrogatories, nos. 10-25. Each of these interrogatories asks Kolker to "[i]dentify all witnesses and documents that support" a particular allegation made by Kolker in his complaint. For example: "Identify all witnesses and documents that support your allegation in …

> Paragraph 10 of the Complaint that: In April of 2008, Plaintiff signed a consulting agreement with VNUS to develop a business plan for a potential new division of VNUS which would be called Centers for Advanced Vein Care ("CAVC").
>
> Paragraph 12 of the Complaint that: [R]ather than choosing to reasonably accommodate plaintiff's disability, defendants chose to retaliate against plaintiff by discriminating against him and presenting a consulting agreement as opposed to the agreed upon employment.
>
> Paragraph 16 of the Complaint that: By not hiring him as an employee based solely on the existence of Plaintiff's disability … Defendants … discriminated against Plaintiff on the basis of his disability.[16]

Kolker objects to all sixteen special interrogatories on the ground that they improperly seek to discover the privileged attorney work-product of Kolker's counsel.

---

[14] *Id.*

[15] *Id.*

[16] *See* Docket No. 35-1, Ex. H.

4
Case No.: C 10-0900 SBA (PSG)
ORDER GRANTING-IN-PART PLAINTIFF'S MOTION TO COMPEL; ORDER GRANTING-IN-PART DEFENDANTS' MOTION TO COMPEL

On September 2, 2011, immediately after the close of fact discovery, Kolker sent Covidien his disclosure of experts and related documents, but failed to produce the required expert report or summary of facts and opinions. Kolker supplemented his disclosures two weeks later, providing an additional summary of facts and opinions as well as the report. Covidien nevertheless argues that it has been unfairly prejudiced by the delay and seeks to preclude Kolker's retained and non-retained experts from testifying at trial.[17] However, at oral argument, Covidien conceded that it would suffer no prejudice if afforded appropriate time to tender its expert in response. Because Kolker has agreed to accommodate Covidien's need for more time due to the delayed release of the expert report,[18] this aspect of Covidien's motion is now moot. Covidien's motion to compel also addresses several requests for production related to third-party records in Kolker's possession. Kolker reports that he has produced the documents.[19] This aspect of Covidien's motion is also moot.

## II. LEGAL STANDARD

Pursuant to Fed. R. Civ. P. 26, parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense. Relevant information need not be admissible at the trial if the discovery appears reasonably calculated to lead to the discovery of admissible evidence. The court must limit the frequency or extent of discovery if it is unreasonably cumulative

---

[17] *See* Docket No. 43 at 4-5.

[18] *See* Docket No. 37 at 3; Docket No. 37-1 at 2 ("I offered to make whatever accommodations would be needed to allow Defendant to fully depose Ms. Baker at any time it wished and offered to make sure that Defendant would have as much time as it wished to disclose a supplemental expert on the issues Ms. Baker was addressing in her report, as long as Plaintiff would be allowed to depose that expert at some point before trial.").

[19] *See id.* Covidien appears to have accepted Kolker's production, as it did not address these RFPs in its reply brief or at oral argument.

or duplicative, or can be obtained from some other source that is more convenient, or the burden or expense of the proposed discovery outweighs its likely benefit. Upon a motion to compel pursuant to Fed. R. Civ. P. 37(a)(3), the moving party has the burden of demonstrating relevance.[20]

### III. DISCUSSION

**A. Kolker's Demand for Inspection of Documents**

   **1. Business Plans: DFI Nos. 41 and 42**

Kolker contends that discovery of the business plans for VNUS's European subsidiaries is relevant to whether he would have received stock in VNUS had he been made an employee. The lynchpin of his relevance argument is Farley's testimony at deposition that the head of VNUS's German subsidiary received stock options and stock grants.[21] Covidien has asserted that no stock would have been given to Kolker even as a CAVC employee because the CAVC business plan made no provision for it.[22] Kolker argues that he should be afforded access to the business plan information for the European subsidiaries in order to test this assertion. If, for example, the business plan for the German subsidiary made no provision for stock, but the subsidiary's general manager or CEO-equivalent nonetheless received VNUS stock options or grants, then Kolker argues that such evidence would discredit Covidien's defense theory.

Covidien responds that any information pertaining to business plans for two subsidiaries on a separate continent that were established several years before Kolker proposed CAVC is remote and unrelated to Kolker's claims. Because Kolker developed and drafted the CAVC business plan,

---

[20] *See Soto v. City of Concord*, 162 F.R.D. 603, 610 (N.D. Cal. 1995).

[21] *See* Docket No. 42-1, Ex. A at 85:25 - 86:22 ("Q: What were [the German and UK subsidiary] names? A: VNUS GmbH and VNUS UK Ltd., I believe. *** Q: [W]ho ran VNUS GmbH? A: Dieter Bielang? *** Q: Did he have stock options? A: Yes. Q: Stock grants? A: Yes.") Kolker states in his brief that Farley testified to several employees in the Great Britain subsidiary who received stock options and grants. The only evidence before the court, however, is the short excerpt from Farley's deposition transcript referenced above, which refers only to the head of VNUS GmbH, which the court presumes is the German subsidiary.

[22] *See* Docket No. 38 at 7-8.

6
Case No.: C 10-0900 SBA (PSG)
ORDER GRANTING-IN-PART PLAINTIFF'S MOTION TO COMPEL; ORDER GRANTING-IN-PART DEFENDANTS' MOTION TO COMPEL

made no provision for stock grants or options, and admitted at deposition that the plan required adjustments and edits by the VNUS team, Covidien asserts that for all information relevant to Kolker's claims, he need look no further than his own, "poorly drafted" plan.[23]

Kolker is correct that whether or not the CAVC business plan would have been determinative of his receiving or not receiving stock options is at issue. If similarly situated employees of the British or German subsidiaries received any kind of VNUS stock, as testified to by Farley, then whether or not those subsidiaries' plans provided for stock grants or options is information that "bears on, or that reasonably could lead to other matters that bear on, any issue that is or may be in the case."[24] DFI nos. 41 and 42 therefore are within the broad scope of relevant discovery set by the federal rules.

Covidien's reliance on *Hardrick v. Legal Services Corp.*[25] is not persuasive. In *Hardrick*, the court denied plaintiff's motion to compel interrogatory responses in an employment discrimination action because the discovery sought was not tailored. But in *Hardrick*, the plaintiff sought discovery "concerning the entire scope of the defendant's personnel practices and procedures for the entire corporation" even though the plaintiff's claim in no way involved "how applicants are treated, the corporation's hiring practices, the administering of tests for hiring or promotions, … or other practices and procedures which are the subjects of many of the interrogatories at issue."[26] Here, Kolker seeks far narrower discovery aimed at a specific issue – the content of business plans for two specific VNUS subsidiaries – not the entire scope of defendants' personnel procedures and practices. In addition, *Hardrick* itself recognized that discovery

---

[23] *See* Docket No. 38 at 7-8.

[24] *See Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 351 (1978) (citing *Hickman v. Taylor*, 329 U.S. 495, 501 (1947)).

[25] 96 F.R.D. 617 (D.D.C. 1983).

[26] *See id.* at 618.

7
Case No.: C 10-0900 SBA (PSG)
ORDER GRANTING-IN-PART PLAINTIFF'S MOTION TO COMPEL; ORDER GRANTING-IN-PART DEFENDANTS' MOTION TO COMPEL

"involving highly individualized claims of discriminatory treatment should be restricted to the practices at issue in the case, applied to employees in similar circumstances to determine if the employer treats *all* of its employees under those circumstances in the same manner."[27]

Kolker's requested discovery related to the British and German business plans would do just that, by illuminating a practice at issue in this case – whether providing VNUS stock to subsidiary top management took place regardless of the provisions made in the relevant business plans. The court therefore will order the production of the initial business plans that were developed and approved for the German and British subsidiaries of VNUS at the time that each subsidiary was established.

### 2. Stock Options, Grants, Employment Agreements: DFI Nos. 43, 45, 46, 67 and 68

The parties make similar arguments with respect to the relevance of Kolker's requests relating to stock options and/or grants, as well as employment agreements, for the British and German subsidiary employees. Covidien also notes that Kolker himself negotiated his consulting agreement, and besides making no reference to stock, the agreement was fully integrated.[28] Thus, Covidien argues that the parol evidence rule bars any extrinsic evidence that contradicts the language of the contract, rendering the terms of separate agreements between VNUS and its European subsidiary employees superfluous and irrelevant.[29]

Covidien misstates the purpose of Kolker's demand to inspect stock documents, which is not to clarify or re-interpret his consulting agreement with VNUS. Rather, whether or not other similarly situated subsidiary employees were offered stock in VNUS may tend to support or

---

[27] *Id.* at 619.

[28] *See* Docket No. 38 at 7; Docket No. 38-2, Ex. A.

[29] *See id.* (citing *Electronic Recyclers Intern, Inc. v. Dlubak Glass Co.*, CV F 10-760 LJO, 2011 WL 3163370, at *3-4 (E.D. Cal. July 26, 2011) (applying the parol evidence rule to a California-based contract dispute pursuant to Cal. Code Civ. Proc. § 1856)).

weaken Kolker's claim that the same treatment would have been extended to him as an employee of CAVC. The court knows of no rule that precludes a company from offering stock options or stock grants in addition to the contractually agreed-upon compensation terms. The stock options or grants provided to other subsidiary employees may also be relevant to assessing the value of the options or grants that he allegedly would have received.[30] In contrast, the only relevance that Kolker asserts of the employment agreements is whether other employees were subject to drug or alcohol testing and limitations. Unlike Farley's testimony that subsidiary employees received stock, Kolker has offered no evidence that discovery of the employment agreements would help illuminate his discrimination claim or even lead to further discovery of admissible evidence.

The court also must consider the privacy interests of the employees whose employment and equity compensation documents are being sought. Covidien argues that Kolker must go beyond the liberal standard for relevance under the federal rules and demonstrate a "compelling need" for employment documents of this nature.[31] Covidien relies on several California cases for the proposition that "even when discovery of private information is found directly relevant to the issues of ongoing litigation, it will not be automatically allowed; there must [] be a 'careful balancing' of the 'compelling public need' for discovery against the 'fundamental right of privacy.'"[32]

---

[30] *See* Docket No. 42 at 2, 3.

[31] *See* Docket No. 38 at 5.

[32] *See Board of Trustees v. Super Ct.*, 119 Cal. App. 3d 516, 525 (1981) (quoting *City of Santa Barbara v. Adamson*, 27 Cal. 3d 123, 130 (1980)). *See also El Dorado Sav. & Loan Ass'n v. Superior Court*, 190 Cal. App. 3d 342, 346 (1987) (reversing the trial court's order for production of the entire personnel file at issue and remanding for the court to consider whether "less intrusive means" would yield the information sought).

9

Case No.: C 10-0900 SBA (PSG)
ORDER GRANTING-IN-PART PLAINTIFF'S MOTION TO COMPEL; ORDER GRANTING-IN-PART
DEFENDANTS' MOTION TO COMPEL

Federal courts also "recognize a constitutionally-based right of privacy that can be raised in response to a discovery request."[33] When the privacy rights of third-parties are at issue, courts seek to balance the need for the information sought against the right asserted.[34] In the employment discrimination context, "a party seeking the discovery of personnel information must demonstrate, notwithstanding the breadth of discovery, that the value of the information sought would outweigh the privacy interests of the affected individuals."[35] This may be accomplished by limiting the scope and nature of the request.[36]

Kolker's demand to inspect third-party employee documents implicates the privacy rights of those third-parties. The fact that the DFIs at issue "impinge[] upon the privacy interests of third-parties argues against the unconstrained production of these records."[37] Kolker emphasizes that he does not seek entire personnel files, which contain sensitive information relating to evaluations and disciplinary matters, but only records of stock option and stock grant plans, which are already a matter of public record for upper management in public companies.[38] Additionally, Kolker emphasizes that the employee stock information will be subject to the confidentiality provisions of the parties' stipulated protective order and will be returned or destroyed after the litigation closes.

---

[33] *Soto*, 162 F.R.D. at 616 (quoting *Breed v. United States Dist. Ct. for Northern District*, 542 F.2d 1114, 1116 (9th Cir.1976)).

[34] *See Rubin v. Regents of Univ. of California*, 114 F.R.D. 1, at *4 (N.D. Cal. 1986) (balancing university's claimed "academic privilege" not to reveal the identity of faculty peer evaluators against plaintiff's need for disclosure of the evaluator's identity as part of her prima-facie case of sex discrimination). *See also Perry v. State Farm Fire & Cas. Co.*, 734 F.2d 1441 (11th Cir. 1984), *cert. den.* 469 U.S. 1108, 105 S.Ct 784 (1985) ("Requests for court orders [to government agencies under FOIA] should be evaluated by balancing the need for disclosure against the potential harm to the subject of the disclosure.").

[35] *Onwuka v. Federal Express Corp.*, 178 F.R.D. 508, 517 (D. Minn. 1997).

[36] *See id.* at 517-18 (imposing limitations upon, but ultimately approving, a discovery request seeking records of disciplinary actions taken against other employees).

[37] *See* 178 F.R.D. at 517

[38] *See* Docket No. 42 at 3. Kolker asserts that VNUS was a publicly-traded company at the time of his contract.

Although Kolker does not request the personnel files in their entirety and limits the scope to the small number of employees at each subsidiary, the court is not persuaded that stock options or grants for *all* other subsidiary employees are sufficiently relevant to justify the imposition on third-party privacy rights. In addition, Kolker fails to provide any temporal boundaries on his request, even though the subsidiaries came into existence several years before the founding and dissolution of CAVC and presumably still are in existence.

Based on Kolker's allegations, the only European subsidiary employees for whom the receipt of stock options or grants is sufficiently relevant to outweigh the affected privacy interest are those individuals who served in the same or comparable functional role as the CEO of VNUS GmbH and VNUS UK Ltd. during the startup years of those companies. Accordingly, the court will grant Kolker's motion as to DFI nos. 43, 45, and 46 only as they apply to the individuals serving in the same or comparable role as CEO of the European subsidiaries at the time those companies were established and until the acquisition of VNUS by Covidien. The documents are to be produced pursuant to the provisions of the parties' stipulated protective order.

**B.  Covidien's Special Interrogatories Nos. 10 - 25**

Each of the special interrogatories at issue seeks the identification of "all witnesses and documents that support" a discrete aspect of Kolker's claims. Covidien frames these interrogatories as "contention interrogatories," and argues that its requests mirror discovery outlined by Fed. R. Civ. P. 26(a)(1)(A) and are supported by case law in this district. Kolker denies that he must respond on the ground that Covidien's request improperly seeks attorney work-product.

The federal rules require parties in their initial disclosures to provide the identity of individuals, as well as copies or descriptions of documents, that they "may use to support [their] claims or defenses."[39] The rules do not require parties to specify which individuals or documents

---

[39] *See* Fed. R. Civ. P. 26(a)(1)(A)(i),(ii).

11

Case No.: C 10-0900 SBA (PSG)
ORDER GRANTING-IN-PART PLAINTIFF'S MOTION TO COMPEL; ORDER GRANTING-IN-PART
DEFENDANTS' MOTION TO COMPEL

may be used for specific or particularized elements or aspects of their claims.[40] Contention interrogatories may refer to many different kinds of questions ranging from asking "another party to indicate *what* it contends" to asking "an opponent to state all the *evidence* on which it *bases* some specified contention."[41] Courts "generally approve of appropriately timed contention interrogatories as they tend to narrow issues, avoid wasteful preparation, and it is hoped, expedite a resolution of the litigation."[42] While courts are "loathe to require a party to 'write basically a portrait of their trial' for the other parties,'"[43] they generally distinguish between "contention interrogatories" and interrogatories seeking the identity of witnesses or documents.[44] Along the lines of Rule 26's initial disclosures, courts generally approve of such "identification interrogatories," whether early or late in a case.[45]

The court agrees with Covidien that Kolker cannot claim a privilege over the identity or description of witnesses or documents that may be used to support Kolker's allegations. Covidien has not requested a summary or even identification of "interviews, statements, memoranda, correspondence, briefs, mental impressions," or other aspects of an attorney's work-product subject to the protections of the work-product doctrine.[46] Kolker argues that the identity of "[t]he exact

---

[40] *See id.*

[41] *See In re Convergent Technologies Securities Litigation*, 108 F.R.D. 328, 333 (N.D. Cal. 1985) (emphasis in original).

[42] *Roberts v. Heim*, 130 F.R.D. 424, 427 (N.D. Cal. 1989).

[43] *Id.*

[44] *See In re Convergent Technologies*, 108 F.R.D. at 340.

[45] *See id.* ("There is no reason plaintiffs should not identify at this juncture any witnesses whom plaintiffs know have information that supports or contradicts any of the controverted allegations in plaintiffs[' complaint].").

[46] *See Hickman v. Taylor*, 329 U.S. 495 (1947).

12
Case No.: C 10-0900 SBA (PSG)
ORDER GRANTING-IN-PART PLAINTIFF'S MOTION TO COMPEL; ORDER GRANTING-IN-PART
DEFENDANTS' MOTION TO COMPEL

witness by whom a relevant fact may be proven at the trial" is protected work product.[47] In *McNamara v. Erschen*, however, the court distinguished between an interrogatory "seeking only the identity of persons known to the plaintiff in connection with those allegations of the complaint" and "the subsequent mental determination of what precise witnesses are best available to prove a relevant fact," especially when such identity is requested at an early stage of the litigation.[48]

Although Covidien's special interrogatories require Kolker to identify witnesses and documents that support a particular fact or claim as alleged in the complaint, they do not go so far as to require disclosure of counsel's work-product. Kolker may respond to the interrogatories at issue simply by listing one or more witnesses or documents that support its claims, not unlike the information required by Rule 26(a) initial disclosures or a broader identification interrogatory. Kolker need not reveal counsel's thought process behind identifying the witness(es) and document(s) or whether certain witnesses have been or will be interviewed or used at trial. To the extent that even identifying a witness or document in support of particular allegations may provide a vague indication of Kolker's strategy for trial, such disclosure does not impinge on the work-product doctrine so long as confidential documents containing such matters are fully protected.[49]

## IV. CONCLUSION

In accordance with the foregoing, the court hereby GRANTS Kolker's motion to compel DFI nos. 41 and 42. The court further GRANTS-IN-PART Kolker's motion to compel DFI nos. 43, 45, and 46, within the limits detailed above, and DENIES Kolker's motion to compel DFI nos. 67

---

[47] *See* Docket No. 37 at 2 (quoting *McNamara v. Erschen*, 8 F.R.D. 427, 429 (D. Del. 1948)).

[48] *See McNamara*, 8 F.R.D. at 429.

[49] *See In re Convergent Technologies*, 108 F.R.D. at 333 (quoting Notes of Advisory Committee on 1970 amendments to Fed. R. Civ. P 26(b)(3): "Rule 33 [has] been revised in order to permit discovery calling for opinions, contentions, and admissions relating not only to fact but also to the application of law to fact. Under those rules, a party and his attorney … may be required to disclose, to some extent, mental impressions, opinions, or conclusions. But documents or parts of documents containing these matters are protected against discovery by this subdivision.")).

Case No.: C 10-0900 SBA (PSG)
ORDER GRANTING-IN-PART PLAINTIFF'S MOTION TO COMPEL; ORDER GRANTING-IN-PART
DEFENDANTS' MOTION TO COMPEL

and 68. The court GRANTS Covidien's motion to compel a response to special interrogatories nos. 10 – 25 and DENIES Covidien's motions to preclude expert testimony and for requests for production as moot. The court further DENIES both parties' requests for sanctions.

**IT IS SO ORDERED.**

Dated: 10/24/2011

                                              PAUL S. GREWAL
                                              United States Magistrate Judge

Case No.: C 10-0900 SBA (PSG)
ORDER GRANTING-IN-PART PLAINTIFF'S MOTION TO COMPEL; ORDER GRANTING-IN-PART DEFENDANTS' MOTION TO COMPEL