UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| DAVID KOLKER,<br><br>      Plaintiff,<br>   v.<br><br>VNUS MEDICAL TECHNOLOGIES, INC., COVIDIEN, INC., and DOES 1-20,<br><br>      Defendants. | Case No.: C 10-0900 SBA (PSG)<br><br>**ORDER GRANTING-IN-PART AND DENYING-IN-PART DEFENDANT'S MOTION TO COMPEL**<br><br>**(Re: Docket No. 39)** |

Before the court is the latest in a series of discovery disputes between Defendant Covidien, Inc. ("Covidien") and Plaintiff David Kolker ("Kolker"). Covidien moves to compel Kolker to produce electronic files that were identified using the parties' agreed-upon inspection protocol during a search of Kolker's computer drives, but subsequently withheld based primarily on privacy, privilege, and trade secret concerns. On November 1, 2011, the parties appeared for oral argument. For the reasons set forth herein, Covidien's motion to compel is GRANTED-IN-PART and DENIED-IN-PART. Covidien also seeks sanctions pursuant to Fed. R. Civ. P. 37(a)(5)(A), but did not file a separate motion for sanctions pursuant to Civ. L.R. 7-8. Accordingly, the court DENIES the sanctions request.

# I. BACKGROUND[1]

In this employment discrimination suit, Kolker alleges that Defendant VNUS Technologies, Inc. ("VNUS"), prior to its acquisition by Covidien, unlawfully discriminated against him on the basis of disability. During the period in question, Kolker sought to become Chief Executive Officer of the Centers for Advanced Vein Care ("CAVC"), a wholly owned subsidiary of VNUS that Kolker founded. But upon learning of Kolker's status as a recovering alcoholic, VNUS instead retained Kolker merely as a CAVC consultant. Kolker alleges that as a result of the discrimination and VNUS's failure to hire him as CAVC's CEO, he was deprived of VNUS stock grants and options that he would have otherwise received.[2]

At Kolker's deposition in late February, Covidien learned that Kolker had two computers containing data from the time that Kolker worked with VNUS as a consultant.[3] On March 3, 2011, Covidien served its Second Request For Production of Things, seeking to image the computer hard drives for relevant documents.[4] Kolker objected on grounds of his own privacy and that of third parties, as well as to the disclosure of trade secret information relating to his new business and of communications and documents subject to attorney-client privilege.[5] Through subsequent meet and confer, the parties agreed on a search protocol that Covidien's forensic expert would use to extract relevant documents that were not privileged. The protocol identified as search terms: "Farley", "Van Vleck", "Cowhig", "CAVC", "VNUS", and "Covidien".[6] The protocol excluded any

---

[1] The court provided a detailed case background in its previous order of October 24, 2011. *See* Docket No. 54.

[2] *See* Docket No. 1 ¶¶ 10-20.

[3] *See* Docket No. 48 at 1.

[4] *See* Docket No. 39-1, Ex. A (Covidien's Second Request for Production of Things, Set Two).

[5] *See* Docket No. 46-1 ¶ 2 (Roe Decl. in Opp'n to Def.'s Mot. To Compel).

[6] *See* Docket No. 39-1, Ex. G, ex. 2 (letter of June 14, 2011 instructing expert regarding search protocol). "Cowhig" refers to Michael Cowhig, Covidien's Vice President and General Counsel.

documents with terms pertaining to Kolker's counsel or representation in this case: "Chip", "Charles", "Roe", or "SWR-Law". The parties further agreed that after the inspection and imaging, Kolker would have two weeks to review the files copied and to withhold from production any documents that Kolker deemed objectionable.[7]

As a result of the inspection by search protocol, Covidien's expert copied approximately 10,000 documents.[8] Kolker's counsel and Kolker then reviewed these and withheld approximately 500 documents,[9] citing various objections outline above. On July 27, 2011, Covidien's counsel responded that Kolker's objections were invalid and inadequate because they failed to establish the applicability of the claimed privileges and protections in accordance with Fed. R. Civ. P. 26(b)(5). On September 22, 2011, Kolker supplemented his initial objections with further explanations. Covidien argues that the objections remain inadequate as a basis for Kolker to withhold documents otherwise identified as relevant by the agreed-upon search terms. Covidien moves to compel production of specific items withheld. These are: item nos. 1, 6, 14-18, 48-63, 65-68, 122-125, 150, 156-157, 182-185, 216-200, 223-226, 273-275, 288, 299-302, 350, 353, 395-399, and 445-456.

## II. LEGAL STANDARDS

Pursuant to Fed. R. Civ. P. 26, parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense. A party claiming privilege or work-product protection must: "expressly make the claim; and describe the nature of the documents,

---

"Van Vleck" refers to Cindee Van Vleck, Covidien's then-Director of Human Resources. "Farley" refers to Brian Farley, VNUS's then-Chief Executive Officer.

[7] *See* Docket No. 46-1 ¶ 2.

[8] *See id.* ¶ 3.

[9] *See id.*

communications, or tangible things not produced or disclosed – and do so in a manner that, without revealing information itself privileged or protected, will enable other parties to assess the claim."[10]

### III. DISCUSSION

Resolution of this dispute turns on the narrow question of whether Kolker's objections to production are sufficient under the law. Covidien argues that Kolker has failed to provide sufficiently detailed log entries to enable Coviden to assess the claims to privacy or privilege. Covidien contends that the minimum information sufficient for the purpose of a privilege log includes (1) the identity and position of the author, (2) the identity and position of the recipient(s), (3) the date the document was prepared or generated, (4) the title and description of the document, (5) the subject matter addressed, (6) the purpose for which it was prepared or communicated, (7) the present location of the document, and (8) the specific privilege or reason it is being withheld.[11] Here, Covidien contends that Kolker's initial and amended objections consist of mere blanket assertions of privilege and privacy. Kolker responds that the information provided with each objection is sufficient under the guidelines set by Rule 26.

In *Burlington Northern*, the court noted that there is not a single sufficient approach to describing privileged information.[12] "This circuit has held that a privilege log is *sufficient* to properly assert the privilege, without explicitly holding that it is *necessary* to meet those requirements."[13] Courts have deemed sufficient privilege logs such as that described above, as well

---

[10] Fed. R. Civ. P. 26(b)(5)(A). *See also Burlington Northern & Santa Fe Ry. Co. v. United States Dist. Court for the Dist. of Montana*, 408 F.3d 1142, 1149 (9th Cir. 2005) (holding that boilerplate objections are insufficient to assert privilege, but provision of the "particulars typically contained in a privilege log is presumptively sufficient").

[11] *See* Docket No. 39 at 4 (citing *Mancini v. Ins. Corp. of New York*, No. 07cv1750-L(NLS) 2009 WL 1765295, at *3 (S.D. Cal. June 18, 2009) (citing *Miller v. Pacucci*, 141 F.R.D. 292, 302 (C.D. Cal. 1992))).

[12] *See Burlington Northern*, 408 F.3d at 1148.

[13] *Id.* (citing *Dole v. Milonas*, 889 F.2d 885, 890 (9th Cir. 1989); *In re Grand Jury Investigation*, 974 F.2d 1068, 1071 (9th Cir. 1992)) (emphasis in original).

4

Case No.: C 10-0900 SBA (PSG)
ORDER GRANTING-IN-PART AND DENYING-IN-PART DEFENDANT'S MOTION TO COMPEL

as other means to determining privilege, such as *in camera* review by the court and submission of redacted materials, which "convey[] some information about the content of the allegedly privileged material."[14] These acceptable methods are in contrast to a "boilerplate objection" that provides insufficient information to the court.[15]

Kolker's objections to producing the documents may be grouped into a few categories. The court will address the sufficiency of Kolker's explanations as to each category and group of items.

First are materials that Kolker says were identified in error based on the search term "CAVC." These include documents connected to a separate, unrelated entity called "CAVC of Montana,"[16] as well as documents unrelated to CAVC but which triggered the search term because Kolker later used a CAVC template to develop unrelated materials for his own business.[17] Specifically, item nos. 1 and 6 consist of invoices from DMKolker to CAVC Montana. Covidien complains that Kolker's counsel did not include this information in his objections or amended objections, but also does not argue that nos. 1 and 6 have any relevance to the present litigation. Covidien's motion as to item nos. 1 and 6 is therefore DENIED.

Item nos. 14-18 and no. 150 are draft "management services agreements" created by Kolker for his DMKolker business, for which he used a CAVC agreement as the template. Kolker's amended objections describe each of these as "management service agreement for DMKolker, trade secret and right of privacy."[18] Covidien argues that the objections do not provide a valid explanation as to why the documents were identified by the protocol but are protected by a right to

---

[14] *Id.* at 1149.

[15] *See id.*

[16] CAVC Montana is a client of DMKolker, one of Kolker's businesses from after the time relevant to the lawsuit. *See* Docket No. 46 at 4; Docket 46-1 & 6.

[17] *See* Docket No. 46 at 4, 5; Docket 46-1 && 7, 10.

[18] *See* Docket No. 39-1, Ex. J.

United States District Court
For the Northern District of California

privacy and whether they may contain trigger terms other than CAVC, such as "Cowhig", "Farley", or "Van Cleck." Although his position in his papers was less than clear, Kolker confirmed at oral argument that for those documents that implicate Kolker's right of privacy and trade secret, the only search terms indicated were either "CAVC" or "VNUS."[19] Covidien also argues that because the documents were based on a former CAVC document later altered by Kolker, they are responsive to the request and should be produced under the protective order.[20]

Under *Burlington Northern*, it is not necessary for Kolker's objections to contain all of the information that would otherwise be included in a privilege log, so long as the information provided is not merely boilerplate and allows the court to assess the claim. Nevertheless, the court is not persuaded that Kolker has carried his burden with respect to these items. The fact that the protocol search returned several documents used in Kolker's new business does not diminish the fact that the template giving rise to the disputed documents was first created or utilized during Kolker's time with VNUS. In addition, Kolker's assertions of "trade secret" and "right of privacy" are no more than blanket assertions. Covidien's motion as to item nos. 14-18 and 150 is therefore GRANTED, to be produced subject to the provisions of the protective order.

Second are materials for which Kolker is unable to determine why they were triggered by the protocol search because none of the agreed-upon terms are present or visible in the documents.[21] These constitute the bulk of Kolker's withheld documents. Subject to these objections

---

[19] *See* FTR 3:07:45 – 3:08:32  (Nov. 1, 2011) ("I thought it was understood with counsel that when it came to the trade secret and right of privacy objections, the only search terms which were at all indicated were the 'CAVC' and 'VNUS' search terms. The individuals [in the search terms] were not in those documents. Those documents were all DMKolker, the subsequent business documents. *** So when I would indicate in my response that neither CAVC or VNUS are in here, that was with the understanding that those are the only search terms pertinent to those documents."). *See also* Docket No. 46-1 ¶ 4 ("The only search terms found in documents with right of privacy or trade secret objections were 'CAVC' and 'VNUS' so when I indicated that there were no search terms visible in the document, I wrote 'neither CAVC nor VNUS are referenced.'").

[20] *See* Docket No. 48 at 3.

[21] *See* Docket No. 46 at 4, 5; Docket 46-1 ¶¶ 8, 9, 12-17, 19.

are item nos. 48-63, 65-68, 122-125, 182-185, 216, 217-220, 223-226, 273-275, 288, 299-302, 350, 353, 395-399, 445-448, 450, 452, 454, and 456. With some minimal variation, the objections for these items state: "DMKolker client communication (email string re DMKolker business, invoice for client of DMKolker, etc.), right of privacy of third party, right of privacy of Plaintiff, trade secret. (Neither CAVC nor VNUS is referenced)."[22] Kolker's counsel emphasizes that he is unable to ascertain why documents were produced without any of the search terms – CAVC, VNUS, or any of the others[23] – visible on the documents, but would leave it to Covidien's forensic expert to explain.[24]

Unfortunately, no such explanation has been tendered. Without some showing by Covidien that these documents are actually relevant based on the presence of one or more of the agreed-upon search terms, the court finds that their relevance for production – or why the protocol search identified them to begin with – is unsubstantiated. On this basis, the court DENIES Covidien's motion as to item nos. 48-63, 65-68, 122-125, 182-185, 216, 217-220, 223-226, 273-275, 288, 299-302, 350, 353, 395-399, 445-448, 450, 452, 454, and 456.

Third are documents that contain one or more key terms, but for which Kolker is claiming the right to withhold based on privacy, third-party privacy, or trade secret. These are item nos. 156-157 and nos. 449, 451, 453 and 455. Kolker explains that item nos. 156-157 consist of two types of emails – one containing Kolker's personal banking information in which the attached bank statement had "VNUS" in the email title, and the other containing emails between Kolker and

---

[22] *See* Docket No. 39-1, Ex. J.

[23] Once again, although Kolker's objections address only the CAVC and VNUS terms, at oral argument counsel represented that none of the agreed-upon terms were present. *See* FTR 3:09:40 – 3:09:50 ("That is when we came up with the fact that some of these documents don't have the search terms in them."). *See also* Docket No. 46-1 ¶ 4 ("There were also many documents in which there is no indication in the document itself why the documents had been produced by the computer expert. In other words, in many of these documents, there is nothing visible on the documents showing the search terms 'Van Vleck, Cowhig, CAVC, VNUS or Covidien.'").

[24] *See* Docket No. 46 at 4; Docket No. 46-1 ¶ 8.

DMKolker customers or vendors in which "CAVC" is found in the email heading.[25] The log produced by Kolker describes these items as: "entries labeled DMK Consulting *** personal financial information and business information for DMKolker, right of privacy of third party, right of privacy of Plaintiff and Plaintiff's business and trade secret."[26] For item nos. 449, 451, 453 and 455, Kolker explains that the objections provided are "self explanatory" as to why CAVC is mentioned. Those objections state: "communication between DMKolker and a potential client, right of privacy of third party, right of privacy of Plaintiff, trade secret. (CAVC mentioned in connection with discussions with potential client about running similar business post Covidien)."[27]

These descriptions – supplemented by counsel's explanation in response to this motion – are adequate for the court to assess why the protocol search initially triggered the documents. With respect to the emails containing "VNUS" or "CAVC" in the email or attachment headings, Kolker's assertions of privacy, third-party privacy, and trade secret are vague and offer no means for the court to assess their strength. Thus, there does not appear to be any basis for withholding the material subject to the parties' protective order. In contrast, Kolker's description of the communications between DMKolker and potential clients, regarding running a similar business post-Covidien, do provide the court with a basis to assess the nature of the exchanges. Accordingly, Covidien's motion is GRANTED as to item nos. 156-157 and is DENIED as to item nos. 449, 451, 453 and 455.

---

[25] *See* Docket No. 46-1 ¶ 11.

[26] *See* Docket No. 39-1, Ex. J.

[27] *See id.*

8
Case No.: C 10-0900 SBA (PSG)
ORDER GRANTING-IN-PART AND DENYING-IN-PART DEFENDANT'S MOTION TO COMPEL

### IV. CONCLUSION

In accordance with the foregoing, the court hereby GRANTS-IN-PART and DENIES-IN-PART Covidien's motion to compel. No later than December 9, 2011, Kolker shall produce the documents that have been improperly withheld.

**IT IS SO ORDERED.**

Dated: November 22, 2011

*Paul S. Grewal*
PAUL S. GREWAL
United States Magistrate Judge