1

2

3

4

5                      UNITED STATES DISTRICT COURT

6            FOR THE NORTHERN DISTRICT OF CALIFORNIA

7                          OAKLAND DIVISION

8

9
   DAVID KOLKER,                          Case No:  C 10-00900 SBA
10
              Plaintiff,                   **ORDER DENYING DEFENDANT'S
11                                         MOTION FOR SUMMARY
         vs.                               JUDGMENT**
12
   VNUS MEDICAL TECHNOLOGIES.,             Dkt. 44
13 COVIDIEN, and DOES 1-20,

14            Defendants.

15

16        Plaintiff David Kolker brings the instant disability discrimination action against

17 VNUS Medical Technologies ("VNUS") and Covidien alleging a single claim for disability

18 discrimination under California Fair Employment and Housing Act ("FEHA"), Cal. Gov.

19 Code § 12940 et seq.  The Court has jurisdiction based on the diversity of the parties.  See

20 28 U.S.C. § 1332.  The parties are presently before the Court on Covidien's Motion for

21 Summary Judgment.  Dkt. 44.[1]  Having read and considered the papers filed in connection

22 with this matter and being fully informed, the Court hereby DENIES the motion.  The

23 Court, in its discretion, finds this matter suitable for resolution without oral argument.  Fed.

24 R. Civ. P. 78(b); N.D. Cal. Civ. L.R. 7-1(b).

25

26 ───────────────

27        [1] VNUS merged into Covidien, and no longer exists as a going concern.  See 8/2/10
   Order at 5-6, Dkt. 17.  Thus, the instant motion is brought by Covidien only.  However,
   unless stated otherwise, all further references to "Defendant" encompass VNUS and
28 Covidien.

## I.      **BACKGROUND**

### A.      FACTUAL SUMMARY

In 2000, Plaintiff founded Vein Centers for Excellence ("VCFE"), a practice management consulting company for varicose vein removal centers, which he operated on a part-time basis.  Nader Decl. Ex. A ("Kolker Depo.") at 52:9-12, 52:20-21, Dkt. 44-2.  In 2004, Plaintiff began working full-time at VCFE as its President.  Id. at 50:13-15, 52:9-53:20.  In 2007, Plaintiff took an unannounced leave from the company.  Id. Ex. C ("Barnell Depo.") at 32:8-11, Dkt. 44-5.  VCFE learned that Plaintiff's absence was due to "drug problems."  Id. at 29:21-22.  The company terminated Plaintiff's employment sometime in 2007, ostensibly for job abandonment.  Id. at 31:14-24, 32:16-18.[2]

In December 2007 or January 2008, Plaintiff approached VNUS, through its Chief Executive Officer, Brian Farley, with an idea for launching a new subsidiary, to be known as Centers for Advanced Vein Care ("CAVC"), similar in operation to VCFE.  Kolker Decl. ¶ 3.  On April 14, 2008, Plaintiff entered into a Consulting Agreement with VNUS to develop "a business plan for the creation of a 'Vein Clinics' business model to provide diagnosis and treatment to patients in the United States."  Consulting Agt. at 6, Nader Decl. Ex. 1, Dkt. 44-2.  Plaintiff was compensated at a rate of $12,000 every two weeks, and the term of the agreement ran from April 14, 2008 until June 29, 2008.  Id. at 10.  The parties later agreed to extend the term of the agreement through the end of August 2008.  Kolker Depo. at 216:15-18.

In September 2008, after the expiration of the Consulting Agreement, Plaintiff submitted an application for employment with VNUS.  Id. at 273:13-274:2 and Ex. 26.  Upon receiving Plaintiff's job application, VNUS commenced background and reference checks, which were completed around October 2008.  Id. Ex. B ("Farley Decl.") at 33:18-

---

[2] Plaintiff states that since September 2007, he has been in recovery from alcohol and drug abuse and began in-patient treatment at that time.  Kolker Decl. ¶ 2, Dkt. 49-1.  It is unclear from the record whether Plaintiff was receiving treatment prior to or at the time he was terminated from VCFE.

24, 46:7-9, Dkt. 44-4.  As a result of that investigation, Farley learned that Plaintiff had "abandoned" his job at VCFE and that he had been "in recovery."  Id. at 46:4-19.

According to Farley, Plaintiff's unexplained absence from work raised a "big red flag" for him regarding whether to hire Plaintiff as an employee.  Id. and 47:14-25.  Thus, in light of what he had learned regarding the circumstances surrounding Plaintiff's departure from VCFE, coupled with his concerns regarding Plaintiff's performance under the Consulting Agreement, Farley decided not to offer Plaintiff a job as an employee.  Id. at 47:14-25.  Nonetheless, Farley believed that "offering him a consultant opportunity was a good alternative for [Plaintiff] and for [VNUS] to see if it could work out."  Id.  To that end, on October 16, 2008, Farley offered Plaintiff another Consulting Agreement ("Second Consulting Agreement") directly with CAVC.  Id. Ex. A, Ex. 34.

Under the terms of the Second Consulting Agreement, Plaintiff was paid $22,400 per month ($268,800 annualized), plus a $50,000 bonus upon achievement of specific milestones.  Id. at 7.  The term of the Second Consulting Agreement ran from October 20, 2008 until October 19, 2009.  Id. at 11.  In addition, the agreement stated that only upon completion of the specified services under the agreement would the parties discuss "potential employment with the Company."  Id. at 1.  There is no waiver or release of claims set forth anywhere in the agreement.

During the term of Plaintiff's Second Consulting Agreement, VNUS merged into Covidien.  Farley Depo. at 89:17-24.  Covidien decided to eliminate CAVC based on legal risks associated with its operations.  Kolker Depo. at 104:18-105:1, 108:20-24.  Accordingly, Plaintiff's agreement with CAVC concluded under the terms of the agreement.  Plaintiff did not apply for a position with Covidien.  Id. at 111:19-21.

### B.    PROCEDURAL HISTORY

On December 1, 2009, Plaintiff filed a Complaint for Damages against VNUS and Covidien in Santa Clara County Superior Court.  Dkt. 1, Ex. A.  His Complaint alleges a single cause of action for violation of the FEHA based on VNUS' failure to hire him allegedly on the basis of his disability, i.e., being in recovery for alcohol and substance

abuse.  Compl. ¶¶ 13-16.  VNUS and Covidien removed the action on the basis of diversity jurisdiction.  Dkt. 1.  The action was originally assigned to the Honorable Jeremy Fogel.  On September 28, 2011, the Clerk reassigned the action to the undersigned following Judge Fogel's departure from this District.  Dkt. 40.  Thereafter, Defendant Covidien filed the instant motion for summary judgment.  Dkt. 44.  The motion has been fully briefed and is now ripe for adjudication.  Dkt. 49, 53.

## II.    <u>LEGAL STANDARD</u>

Federal Rule of Civil Procedure 56 provides that a party may move for summary judgment on some or all of the claims or defenses presented in an action.  Fed. R. Civ. P. 56(a)(1).  "The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  <u>Id.</u>; <u>see</u> <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 247-48 (1986).  The movant bears the initial burden of demonstrating the basis for the motion and identifying the portions of the pleadings, depositions, answers to interrogatories, affidavits, and admissions on file that establish the absence of a triable issue of material fact.  <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 323 (1986); Fed. R. Civ. P. 56(c)(1)(A) (requiring citation to "particular parts of materials in the record").  If the moving party meets this initial burden, the burden then shifts to the non-moving party to present specific facts showing that there is a genuine issue for trial.  <u>See</u> <u>Celotex</u>, 477 U.S. at 324; <u>Matsushita Elec. Indus. Co. v. Zenith Radio Corp.</u>, 475 U.S. 574, 586-87 (1986).

"On a motion for summary judgment, 'facts must be viewed in the light most favorable to the nonmoving party only if there is a 'genuine' dispute as to those facts.'" <u>Ricci v. DeStefano</u>, 129 S.Ct. 2658, 2677 (2009) (quoting in part <u>Scott v. Harris</u>, 550 U.S. 372, 380 (2007)).  "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted."  <u>Anderson</u>, 477 U.S. at 248.  A factual disput is genuine if it "properly can be resolved in favor of either party."  <u>Id.</u> at 250.  Accordingly, a genuine issue for trial exists if the non-movant presents evidence from

which a reasonable jury, viewing the evidence in the light most favorable to that party, could resolve the material issue in his or her favor.  Id.  "If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted."  Id. at 249-50 (internal citations omitted).  Only admissible evidence may be considered in ruling on a motion for summary judgment.  Orr v. Bank of Am., 285 F.3d 764, 773 (9th Cir. 2002).

## III.  DISCUSSION

### A.  LEGAL FRAMEWORK

The FEHA makes it illegal for an employer "because of the . . . physical disability . . . of any person, to refuse to hire or employ the person."  Cal. Gov't Code § 12940(a).  Although FEHA does not explicitly protect recovering addicts, the Act states that the definition of disability under the ADA applies if it provides "broader protection or coverage" than the FEHA's own definitions.  Cal. Gov't Code § 12926(m).  As such, courts have construed the FEHA to proscribe discrimination on the basis of prior substance and alcohol abuse.  See Lopez v. Pacific Maritime Ass'n  657 F.3d 762, 765 (9th Cir. 2011) ("The ADA and the FEHA protect people who are recovering or who have recovered from a drug addiction[.]"); Gosvener v. Coastal Corp., 51 Cal. App. 4th 805, 813 (1996) ("alcoholism could be a covered disability under the FEHA, which incorporates the definition of disability listed in the Americans with Disabilities Act of 1990 (42 U.S.C. § 12111)"), disapproved on other grounds by Colmenares v. Braemar Country Club, Inc., 29 Cal.4th 1019 (2003).

Courts typically analyze discrimination claims under the burden shifting framework established in McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973).  See Metoyer v. Chassman, 504 F.3d 919, 930 (9th Cir. 2007).  Under the McDonnell Douglas test, the plaintiff must establish a prima facie case of discrimination by showing that:  (1) he belongs to a protected class; (2) he was qualified for the position; (3) he was subject to an adverse employment action; and (4) similarly-situated individuals outside the protected class were treated more favorably.  See  Earl v. Nielsen Media Research, Inc., 658 F.3d 1108, 1112 (9th Cir. 2011).  If the plaintiff establishes the prima facie case of

discrimination, the burden then shifts to the defendant to articulate a legitimate, nondiscriminatory reason for its allegedly discriminatory conduct.  Id.  If the employer articulates a legitimate reason for its action, the employee must show that the proffered reason is a pretext for unlawful discrimination.  Id.

Use of the McDonnell Douglas framework is not mandatory.  "Instead, 'when responding to a summary judgment motion . . . [the plaintiff] may proceed by using the McDonnell Douglas framework, or alternatively, may simply produce direct or circumstantial evidence demonstrating that a discriminatory reason more likely than not motivated [the employer]."  Id. (emphasis added) (quoting in part McGinest v. GTE Serv.ice Corp., 360 F.3d 1103, 1122 (9th Cir. 2004)).  "When the plaintiff offers direct evidence of discriminatory motive, a triable issue as to the actual motivation of the employer is created even if the evidence is not substantial."  Goodwin v. Hunt Wesson, Inc., 150 F.3d 1217, 1221 (9th Cir. 1998).  Indeed, the requisite quantum of evidence is "very little."  Id.

**B.  ANALYSIS**

Defendant contends that Plaintiff cannot establish a prima facie case of discrimination under McDonnell Douglas, as a matter of law.  Mot. at 12.  Plaintiff counters that the McDonnel Douglas test is inapt because he has presented direct evidence of discriminatory animus.  Opp'n at 8.  The Supreme Court has recognized that "the McDonnell Douglas test is inapplicable where the plaintiff presents direct evidence of discrimination."  Trans World Airlines, Inc. v. Thurston, 469 U.S. 111, 121 (1985); accord Enlow v. Salem–Keizer Yellow Cab Co., 389 F.3d 802, 812 (9th Cir. 2004) ("[w]hen a plaintiff alleges disparate treatment based on direct evidence in an ADEA claim, we do not apply the burden-shifting analysis set forth in [McDonnell Douglas].").  Therefore, the threshold question is whether Plaintiff has presented sufficient, direct evidence of discrimination to avoid summary judgment.

"Direct evidence is evidence which, if believed, proves the fact of discriminatory animus without inference or presumption.  Comments demonstrating discriminatory animus

may be found to be direct evidence if there is evidence of a causal relationship between the comments and the adverse job action at issue." <u>DeJung v. Super. Ct.</u>, 169 Cal. App. 4th 533, 550 (2008); <u>see</u> <u>Coghlan v. Am. Seafoods Co. LLC</u>, 413 F.3d 1090, 1095 (9th Cir. 2005) ("Direct evidence typically consists of clearly sexist, racist, or similarly discriminatory statements or actions by the employer."). It is "smoking gun" evidence, which is tantamount to an admission by the decision maker that the adverse employment decision was based on an impermissible basis. <u>See</u> <u>Heard v. Lockheed Missiles & Space Co.</u>, 44 Cal. App. 4th 1735, 1748 (1996).

Here, Plaintiff alleges that Farley specifically told him that he would not hire him because of his prior substance abuse. Opp'n at 9. As support, Plaintiff cites his declaration filed in support of his opposition to the instant motion in which he states: "During discussions about his learning of my substance abuse, Mr. Farley stated that because I was in recovery from my past issues with substance abuse, he did not feel that he could provide me with employment at that time and instead would only consider offering me another consulting agreement." Kolker Decl. ¶ 9. In addition, Plaintiff points to his deposition where he testified that Farley "said that due to their discovery of the substance abuse issue and being in recovery, that they were going to offer me a consulting agreement as opposed to employment." Roe Decl. Ex. A ("Kolker Depo.") at 237:16-19, Dkt. 49-2. Farley's alleged statements constitute direct evidence of discriminatory intent. <u>See, e.g.</u>, <u>Godwin</u>, 150 F.3d at 1221 (manager's comment that he "'did not want to have to deal with another female' . . . directly suggests the existence of bias and no inference is necessary to find discriminatory animus."); <u>DeJung</u>, 169 Cal. App. 4th at 550 (citing statement by decision maker that "Ted's a great guy, but we're looking for someone younger").

Defendant contends that the Court should disregard Plaintiff's declaration on the ground that it is self-serving and contradicts his deposition testimony. Reply at 5. "The general rule in the Ninth Circuit is that a party cannot create an issue of fact by an affidavit contradicting his prior deposition testimony." <u>See</u> <u>Nelson v. City of Davis</u>, 571 F.3d 924, 927 (9th Cir. 2009). According to Defendant, Plaintiff allegedly admitted during his

1  deposition that he could not recall the "exact words" used by Farley.  Reply at 5.  The

2  excerpts from Plaintiff's deposition, however, do not support Defendant's contention.  To

3  the contrary, Plaintiff testified that Farley specifically stated that they were not offering him

4  employment "due to their discovery of the substance abuse issue and being in recovery,"

5  and that such statement was an "exact quote" by Farley.  Kolker Depo. at 237:15-21.

6  Tellingly, Defendant completely ignores this testimony in its Reply.

7         Equally meritless is Defendant's alternative contention that Plaintiff's discrimination

8  claim is barred by the Second Consulting Agreement.  Mot. at 18-20.  According to

9  Defendant, that agreement shows that the parties had not reached any agreement to hire

10  him, and that they would discuss potential employment opportunities only after the

11  agreement expired.  Id. at 19.  It is unclear, however, how the Second Consulting

12  Agreement has any bearing on his discrimination claim.  Nowhere in the agreement is there

13  any waiver or release of claims by Plaintiff against Defendant.  To the extent that

14  Defendant's intent in entering into the Second Consulting Agreement was to preclude

15  Plaintiff from pursuing an employment-related claim against them, they should have clearly

16  stated as such in the agreement.  See Paralift, Inc. v. Super. Ct., 23 Cal. App. 4th 748, 755

17  (1993) (noting that for a release to be valid, it "must be clear, unambiguous and explicit" in

18  expressing the intent of the parties).  Moreover, whether or not the parties had reached an

19  agreement to hire Plaintiff as an employee is beside the point.  Plaintiff is not claiming that

20  Defendant breached any contractual agreement to hire him.  Rather, he is alleging that

21  VNUS refused to offer him employment because of its awareness of his prior alcohol and

22  substance abuse problems.

23         Next, Defendant expends considerable energy attempting to establish a legitimate,

24  non-discriminatory reason for declining to hire Plaintiff; namely, the circumstances of his

25  departure from VCFE and their alleged dissatisfaction with his performance under the first

26  Consulting Agreement.  This showing is germane to the second step of the McDonnell

27  Douglas burden shifting analysis, which is inapplicable where, as here, there is direct

28  evidence of discriminatory animus.  DeJung, 169 Cal. App. 4th at 550 ("there is no need to

engage in this burden-shifting analysis where there is direct evidence of discriminatory animus") (citing <u>Trop v. Sony Pictures Entm't, Inc.</u>, 129 Cal. App. 4th 1133, 1144 (2005)); <u>c.f.</u> <u>Mokler v. Cty. of Orange</u>, 157 Cal. App. 4th 121, 138 (2007) ("Where direct evidence of retaliation is shown, the burden shifting analysis imposed in circumstantial evidence cases does not apply.").[3]

Finally, Defendant argues for the first time in its Reply that it is entitled to summary judgment on the ground that Plaintiff cannot establish that he is disabled or regarded as disabled.  Reply at 7-8.  It is improper for a moving party to introduce in a reply brief new facts or different legal arguments than those presented in the moving papers.  See <u>Coleman v. Quaker Oats Co.</u>, 232 F.3d 1271, 1289 n.4 (9th Cir. 2000) ("[I]ssues cannot be raised for the first time in a reply brief."); <u>State of Nev. v. Watkins</u>, 914 F.2d 1545, 1560 (9th Cir. 1990) ("[Parties] cannot raise a new issue for the first time in their reply briefs.").  Thus, the Court declines to consider Defendant's newly-raised contention at this juncture.

**IV.    <u>CONCLUSION</u>**

For the reasons stated above,

IT IS HEREBY ORDERED THAT:

1.     Defendant's Motion for Summary Judgment is DENIED.

2.     The instant action is REFERRED to Magistrate Judge Jacqueline Corley for a mandatory settlement conference to take place within sixty (60) days of the date this Order is filed.  The date for the settlement conference will be assigned by Magistrate Judge Corley.

3.     In the event the action does not settle, the parties shall appear for a telephonic Case Management Conference on **April 25, 2012 at 3:00 p.m.**  Prior to the date scheduled for the conference, the parties shall meet and confer and prepare a joint Case Management Conference Statement which complies with the Standing Order for All Judges of the

---

[3] That aside, if Farley were as concerned about Plaintiff's skills and performance as he purported to be, it begs the question of why he decided to reengage him under a Second Consulting Agreement for a term and compensation greater than the first.

Northern District of California and the Standing Orders of this Court.  Plaintiff shall assume responsibility for filing the joint statement no less than seven (7) days prior to the conference date.  Plaintiff's counsel is to set up the conference call with all the parties on the line and call chambers at (510) 637-3559.  NO PARTY SHALL CONTACT CHAMBERS DIRECTLY WITHOUT PRIOR AUTHORIZATION OF THE COURT.

4.      The motion hearing and Case Management Conference scheduled for January 31, 2012 are VACATED.

5.      This Order terminates Docket 44.

IT IS SO ORDERED.

Dated:  January 17, 2011

SAUNDRA BROWN ARMSTRONG
United States District Judge